**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**DANIELLE L. MORRIS,**

                                **Plaintiff,**

    vs.                                        **5:12-cv-1795
(MAD/CFH)**

**COMMISSIONER OF SOCIAL SECURITY,**

                                **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **OLINSKY LAW GROUP**<br>300 South State Street<br>Suite 420<br>Syracuse, New York 13202<br>Attorneys for Plaintiff | **HOWARD D. OLINSKY, ESQ.** |
| **SOCIAL SECURITY ADMINISTRATION**<br>Office of the General Counsel<br>Region II<br>26 Federal Plaza - Room 3904<br>New York, New York 10278<br>Attorney for Defendant | **VERNON NORWOOD, ESQ.** |

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff Danielle L. Morris brings the above-captioned action pursuant to 42 U.S.C. § 405(g), seeking a review of the Commissioner of Social Security's decision to deny her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Presently before the Court are Plaintiff's motion for judgment on the pleadings, Dkt. No. 13, and Defendant's opposition and cross-motion for judgment on the pleadings, Dkt. No. 14.

## II. BACKGROUND

On October 27, 2009, Plaintiff protectively filed an application for DIB and SSI, alleging a disability onset date of June 5, 2009. Dkt. No. 9, Administrative Transcript ("T."), at 11, 98-102. On February 5, 2010, Plaintiff's applications were denied, T. 53-54, and on December 2, 2010, Plaintiff and her counsel appeared at a requested hearing before Administrative Law Judge ("ALJ") Robert E. Gale, T. 22-52. ALJ Gale issued a decision denying Plaintiff's claims for benefits on May 20, 2011. T. 8-21. Thereafter, Plaintiff requested review by the Appeals Council, T. 6-7, which review was denied on October 9, 2012, T. 1-4, thereby making the ALJ's decision the final decision of the Commissioner of Social Security.

Plaintiff was 37 years old at the time of the ALJ's decision, with an eighth grade education and past work experience as a kennel technician and fire restoration worker/supervisor. T. 16. Plaintiff alleges disability as a result of hyperthyroidism with Grave's Disease and headaches. T. 13-14, 59-60. The record evidence in this case is undisputed and the Court adopts the parties' factual recitations. *See* Dkt. No. 13 at 4-14; Dkt. No. 14 at 4-8 ("The Commissioner incorporates plaintiff's statement of facts . . . , with the exception of any inferences, arguments, or conclusions contained therein . . . .").

## III. DISCUSSION

### A. Legal Standards

For purposes of both DIB and SSI, a person is disabled when he is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). There is a five-step analysis for evaluating disability claims:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do." The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)).

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether a plaintiff is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Court must examine the Administrative Transcript to ascertain whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a

3

de novo review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     The ALJ's Decision**

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since June 5, 2009. T. 13. At step two, the ALJ concluded that Plaintiff suffered from hyperthyroidism with Grave's Disease and mixed headaches, which qualified as a severe impairments within the meaning of the Social Security Regulations (the "Regulations"). T. 13-14. The ALJ also concluded that Plaintiff's obesity and complaints of low back pain were non-severe impairments. T. 14. At the third step of the analysis, the ALJ determined that Plaintiff's impairments did not meet or equal the severity of any impairment listed in Appendix 1 of the Regulations. *Id.* The ALJ then found that Plaintiff had the residual functional capacity ("RFC") "to perform a full range of work at all exertional levels, but should avoid work requiring a high degree of depth perception, working in close vicinity of moving machinery or at unprotected heights, and concentrated exposure to fumes, odors, dusts, gases, and poor ventilation." *Id.* At step four, the ALJ concluded that Plaintiff was unable to perform any past relevant work, because "[t]hose jobs required exposure to concentrate fumes, odors, and dusts, etc." T. 16. At step five, relying on the medical-vocational guidelines set forth in the Regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 2, the ALJ found that plaintiff had the RFC to perform jobs existing in significant numbers in the national economy. T. 16-17. Therefore, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Act. T. 17.

**C.     Analysis**

In seeking federal judicial review of the Commissioner's decision, Plaintiff argues that: (1) the ALJ erred when he failed to give controlling weight to Plaintiff's treating physician; (2) the

4

ALJ improperly assessed Plaintiff's credibility; and (3) the ALJ erred in his application of the Medical-Vocational Guidelines by failing to account for Plaintiff's non-exertional limitations and develop the record with vocational expert testimony.

### 1. Treating Physician Rule

Under the Regulations, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also Rosa v. Callhan*, 168 F.3d 72, 78-79 (2d Cir. 1999); *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993). An ALJ may refuse to consider the treating physician's opinion only if he is able to set forth good reason for doing so. *Saxon v. Astrue*, 781 F. Supp. 2d 92, 102 (N.D.N.Y. 2011). The less consistent an opinion is with the record as a whole, the less weight it is to be given. *Otts v. Comm'r of Soc. Sec.*, 249 Fed. Appx. 887, 889 (2d Cir. 2007) (an ALJ may reject such an opinion of a treating physician "upon the identification of good reasons, such as substantial contradictory evidence in the record").

The opinion of a treating physician is not afforded controlling weight where the treating physician's opinion contradicts other substantial evidence in the record, such as the opinions of other medical experts. *Williams v. Comm'r of Soc. Sec.*, 236 Fed. Appx. 641, 643-44 (2d Cir. 2007); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (citing 20 C.F.R. § 404.1527(d)(2)). "While the final responsibility for deciding issues relating to disability is reserved to the Commissioner, the ALJ must still give controlling weight to a treating physician's opinion on the nature and severity of a plaintiff's impairment when the opinion is not inconsistent with substantial evidence." *See Martin v. Astrue*, 337 Fed. Appx. 87, 89 (2d Cir. 2009).

When an ALJ refuses to assign a treating physician's opinion controlling weight, he must consider a number of factors to determine the appropriate weight to assign, including: (i) the frequency of the examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. *See* 20 C.F.R. § 404.1527(c); *Shaw*, 221 F.3d at 134. "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (citation omitted).

Here, the ALJ gave limited weight to the opinion of Plaintiff's treating physician Dr. Marasigan. The ALJ stated the following reasons for doing so: (1) Dr. Marasigan's opinion was based on Plaintiff's subjective reports regarding her headaches; (2) the record reflected only three appointments with Dr. Marasigan since the alleged onset date; (3) Plaintiff was "simply prescribed medication to address her subjective headache complaints"; and (4) Dr. Marasigan discussed Plaintiff's "over use of pain medications" with her. T. 16.

Plaintiff first argues that Plaintiff treated with Dr. Marasigan, a neurologist, every three to six months, which is frequent enough to warrant controlling weight. Second, Plaintiff argues that Mr. Marasigan's opinion is well-supported by the medical record. Last, Plaintiff argues that as a neurologist, Dr. Marasigan's was "uniquely qualified to opine as to the limiting effects cause by Plaintiff's epilepsy [sic]." Dkt. No. 13 at 18-19.

As to Plaintiff's first argument, the ALJ correctly noted that Plaintiff only treated with Dr. Marasigan on three occasions after the alleged onset date of June 5, 2009. The frequency of examination by a treating source is one of the factors that the Commissioner must consider in

determining the weight to give to the source's opinion. *See* C.F.R. § 404.1527(c)(2)(i) ("the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion"). In an attempt to undermine the ALJ's finding with respect to frequency of examination, Plaintiff notes that Dr. Marasigan stated in his Medical Source Statement that he saw Plaintiff "every 3-6 months." T. 326. Plaintiff also points to examinations conducted by Dr. Marasigan prior to the alleged onset date. None of these facts disputes the finding by the ALJ that Dr. Marasigan saw Plaintiff only three times during the year and a half between Plaintiff's alleged disability onset date and the date of the ALJ's determination that Plaintiff was not disabled. Thus, this aspect of the ALJ's determination was supported by substantial evidence. *See Tippie v. Astrue*, 791 F. Supp. 2d 638, 653 (finding that substantial evidence supported ALJ's decision to discount opinion of treating physician where treating physician had only seen the plaintiff four times over the two years since alleged onset date).

Plaintiff's second argument, that Dr. Marasigan's opinion is supported by the medical record, is also unavailing. Plaintiff's citation to documents in the Administrative Record which substantiate Plaintiff's diagnosis of exophthalmos as a result of thyroid eye disease misses the mark. Whether Dr. Marasigan's diagnosis of Plaintiff's underlying impairment is consistent with the record evidence is not at issue. There is no indication that any medical source questioned whether Plaintiff suffered from this impairment. In fact, the ALJ found this to be a severe impairment at step two of the sequential analysis. Rather, the ALJ afforded little weight to Dr. Marasigan's opinion regarding the *effects* that Plaintiff's impairments would have on her ability to perform certain work-related functions. The issue is whether Dr. Marasigan's opinion in this regard is consistent with and supported by the record. Plaintiff has not identified, nor has the Court located, any objective medical evidence in the record substantiating this aspect of Dr.

7

Marasigan's opinion. In fact, the objective medical evidence undermines his opinion. For instance, Dr. Marasigan's treatment records consistently note that Plaintiff had no focal neurological deficits. T. 323, 324, 325, 329. Thus, Dr. Marasigan's opinion was based exclusively upon Plaintiff's subjective complaints, and not any clinical and laboratory diagnostic techniques.

Plaintiff also argues that her consistent complaints of pain and worsening of pain during her treatments with other medical sources corroborates Dr. Marasigan's opinion regarding the effects of her headache pain. Dr. Marasigan's opinion is not rendered consistent with the record, and thus, controlling, merely because Plaintiff consistently made subjective complaints of pain from headaches over time. As an initial matter, there is evidence in the record that is patently inconsistent with Dr. Marasigan's opinion. A state examiner concluded that Plaintiff's descriptions of her eye pain and headaches were not consistent. T. 305 ("The Claimant's allegations of constant eye pain/headache is not associated with a migraine described with associated neurological phenomena that would equate to the seizure listings, and so must be evaluated on the basis of the credibility of the allegations. Looking at the record, there are inconsistencies in the descriptions of the pain that do not allow us to assess the credibility of the allegations to be fully supported. . . . Th[ese] inconsistencies between all these exams do[ ] not allow finding an ongoing degree of headache or eye pain alleged."). Another source, Dr. Petrala, found no reason for ocular pain. T. 344 ("Her reported level of pain appeared to be out of proportion with her clinical findings"). Plaintiff herself reported no worsening of her symptoms. T. 293. Moreover, the ALJ correctly noted that Plaintiff was in fact treated for her subjective complaints of headache pain and prescribed pain medication to address the problem. The record evidence also indicates that Plaintiff was not using her pain medications appropriately – calling

8

the veracity of her subjective complaints into doubt – including that Dr. Marasigan spoke with Plaintiff about her over use of such medications, T. 324.  As noted elsewhere in the ALJ's decision, Plaintiff had been noted by her medical sources for "malingering," T. 335, and had issues with regard to her use of pain medication, T.305 ("She was discharged from this practice 11/24/09 for breaking her narcotic use contract.").  Accordingly, the ALJ properly found Dr. Marasigan's opinion was not consistent with the record as a whole, and was unsupported by objective medical evidence.

Plaintiff last argues that the ALJ failed to consider Dr. Marasigan's specialty in neurology in determining the weight to be given to his opinions.  The Regulations provide that the Commissioner will "generally give more weight to the opinion of a specialist about medical issues related to his or her area of speciality than to the opinion of a source who is not a specialist."  20 C.F.R. § 404.1527(c)(5).  Although the ALJ need not explicitly consider each of the factors listed in 20 C.F.R. § 404.1527(c), it must be clear from the ALJ's decision that a proper analysis was undertaken.  *See Hudson v. Colvin*, 5:12-CV-0044, 2013 WL 1500199, at *10 n.25 (N.D.N.Y. Mar. 21, 2013) ("While [the ALJ] could have discussed the factors listed in the regulations in more detail, this does not amount to reversible error because the rationale for his decision is clear and his ultimate determination is supported by substantial evidence."), *adopted by* 2013 WL 1499956 (N.D.N.Y. Apr 10, 2013).  Here, the ALJ noted that Dr. Marasigan observed that Plaintiff had "no focal neurological deficits," implicitly recognizing Dr. Marasigan as a neurologist and, therefore, a specialist.  *See Brown v. Comm'r of Social Sec.*, No. 13 Civ. 827, 2014 WL 783565, *18 (S.D.N.Y. Feb. 28, 2014) (failure to list the 20 C.F.R. § 404.1527(c) factors did not require remand where "[t]he ALJ also noted that [the treating physician] was [the plaintiff's] psychiatrist, recognizing that [the treating physician] qualifies as a specialist") (report

9

and recommendation); *DeJesus v. Colvin*, No. 12 Civ. 7354, 2014 WL 667389, *17 (S.D.N.Y. Feb. 18, 2014) (same) (report and recommendation). Thus, while the ALJ failed to explicitly state that Dr. Marasigan was a specialist, there is no need for remand because the ALJ "applied the substance of the treating physician rule." *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

### 2. Plaintiff's Credibility

"The ALJ has discretion to assess the credibility of a claimant's testimony regarding disabling pain and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). The regulations set out a two-step process for assessing a claimant's statements about pain and other limitations:

> At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. . . . If the claimant does suffer from such an impairment, at the second step, the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record. The ALJ must consider statements the claimant or others make about his impairments, his restrictions, his daily activities, his efforts to work, or any other relevant statements he makes to medical sources during the course of examination or treatment, or to the agency during interviews, on applications, in letters, and in testimony in its administrative proceedings.

*Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (quotations and citations omitted).

If a plaintiff's testimony concerning the intensity, persistence or functional limitations associated with his impairments is not fully supported by clinical evidence, the ALJ must consider additional factors in order to assess that testimony, including: (1) daily activities; (2) location, duration, frequency, and intensity of any symptoms; (3) precipitating and aggravating

10

factors; (4) type, dosage, effectiveness and side effects of any medications taken; (5) other treatment received; and (6) other measures taken to relieve symptoms. 20 C.F.R. §§ 416.929(c)(3)(i)-(vi). The issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of his symptoms are consistent with the objective medical and other evidence. *See* SSR 96-7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186, *2 (Soc. Sec. Admin. Jul. 2, 1996). One strong indication of credibility of an individual's statements is their consistency, both internally and with other information in the record. *Id.* at *5.

"After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony." *Saxon v. Astrue*, 781 F. Supp. 2d 92, 105 (N.D.N.Y. 2011) (citing, *inter alia*, 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)). An ALJ rejecting subjective testimony "'must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence.'" *Melchior v. Apfel*, 15 F. Supp. 2d 215, 219 (N.D.N.Y. 1998) (quoting *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)). The Commissioner may discount a plaintiff's testimony to the extent that it is inconsistent with medical evidence, the lack of medical treatment, and her own activities during the relevant period. *See Howe-Andrews v. Astrue*, No. CV-05-4539, 2007 WL 1839891,*10 (E.D.N.Y. June 27, 2007). With regard to the sufficiency of credibility determinations, the Commissioner has stated that

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or

11

> that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p, 1996 WL 374186, at *2.

In this case, the ALJ discussed plaintiff's hearing testimony and determined:

> The claimant reported pain, distorted and double vision, loss of vision, waxing and waning visual acuity, pain in her eyes, difficulty concentrating, fatigue, headaches, and a limited ability to lift, walk, stand, and sit (Exhibits 2E and 4E, and Testimony). Yet, the claimant is able to prepare some food, clean, do laundry, meet her own personal care needs, and do some driving (Exhibit 4E and Testimony). Although the claimant alleged tremors in her hands, she stated that she could button a blouse, zip zippers, and tie (Testimony). . . .
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible. The claimant's allegations were not supported by the clinical findings and were inconsistent with her activities of daily living. There was evidence of possible malingering and possible abuse of pain medications. Additionally, the claimant's poor work history detracts from her credibility. Thus, the claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible.

T. 15-16.

Plaintiff argues that the ALJ's determination that she could "prepare some food, clean, do laundry, meet her own personal care needs, and do some driving" was not supported by substantial evidence. Having reviewed the Administrative Transcript in its entirety, the Court finds that the ALJ correctly applied the standard, enumerated in 20 C.F.R. § 404.1529, in assessing Plaintiff's credibility, and that the ALJ's assessment was supported by substantial

12

evidence. Plaintiff testified that although she does not "cook," she is able to prepare sandwiches, salads, and soups for her daily meals. T. 41. Plaintiff also testified that she "can do laundry but I won't." *Id.* Although she claimed that her husband does the housework and grocery shopping, *id.*, there is evidence in the record which indicates that she "is usually able to do her activities of daily living including laundry, dishes and cooking without any assistance," T. 294. Plaintiff also testified that she drives approximately ten miles per month. T. 41.

Plaintiff also argues that remand is warranted because the ALJ failed to explain "how Plaintiff's limited abilities to drive, prepare food or perform limited household chores displayed her ability to work 5 days a week for 8-hour days." Dkt. No. 13 at 21. Plaintiff's argument is misplaced. The issue is not whether Plaintiff's limited ability to undertake normal daily activities demonstrates her ability to work. Rather, the issue is whether the ALJ properly discounted Plaintiff's testimony regarding her symptoms to the extent that it is inconsistent with other evidence. For the reasons stated above, the ALJ's findings in this regard were supported by substantial evidence.

Plaintiff next argues that the ALJ's finding that "there was possible abuse of pain medications" was not supported by substantial evidence because "[t]here is no indication in the record that Plaintiff abused her pain medications or was discharged from a care provider for breaking a narcotics use contract." Dkt. No. 13 at 21. Contrary to Plaintiff's contention, there is sufficient evidence in the record to support the ALJ's determination. As noted above, Dr. Marasigan spoke with Plaintiff about her over use of such medications. T. 324. Plaintiff had been noted by her medical sources for "malingering." T. 335. Moreover, "[s]he was discharged from [a] practice 11/24/09 for breaking her narcotic use contract." T. 305.

Finally, Plaintiff contends that "[i]t is improper for an ALJ to find a Plaintiff's statement not fully credible because those statements are inconsistent with the ALJ's own findings." Dkt. No. 13 at 22. This contention finds no application in the instant matter. Plaintiff may be correct that "it is not sufficient for an ALJ to merely state that he finds the claimant incredible to the extent that her complaints are inconsistent with his RFC determination." *Kunkel v. Comm'r of Soc. Sec.*, No. 12-CV-6478, 2013 WL 4495008, *20 (W.D.N.Y. Aug. 20, 2013); *see also Torres v. Comm'r of Soc. Sec.*, No. 13-CV-330, 2014 WL 69869, *14 (E.D.N.Y. Jan. 09, 2014) ("[T]his boilerplate statement 'gets things backwards' because 'the passage implies that ability to work is determined first and is then used to determine the claimant's credibility.'"). Here, however, the ALJ made no such statement. Thus, Plaintiff's "boilerplate" argument is inapplicable.

Taken as a whole, the record supports the ALJ's determination that Plaintiff was not entirely credible. The Court finds that the ALJ employed the proper legal standards in assessing the credibility of Plaintiff's complaints and adequately specified the reasons for discrediting Plaintiff's statements.

### 3. Application of the Medical-Vocational Guidelines

At the fifth step, the ALJ must determine whether the claimant can make "an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can make such an adjustment, he is "not disabled"; if he cannot, he is "disabled." *Id.* In determining whether an adjustment can be made, the ALJ must consider the claimant's exertional and nonexertional limitations (as defined by his RFC), as well as his age, education, and work history. *Id.* § 404.1520(g).

If an ALJ determines that a claimant cannot perform past relevant work, he turns to the Medical-Vocational Guidelines ("Grids") to determine whether the claimant can perform other jobs that exist in the national economy based on the claimant's RFC, age, education and

experience. *See* 20 C.F.R. Pt. 404, Subpt. P, Appendix 2. In an "ordinary case," in which the claimant has only an exertional limitation,[1] the ALJ may meet this burden by applying the Grids. *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir.1986); *see also* SSR 83-11, Titles II and XVI: Capability To Do Other Work – The Exertionally Based Medical-Vocational Rules Met, 1983 WL 31252, *1 (Soc. Sec. Admin. 1983) (use of Grids to direct conclusion of "disabled" or "not disabled" allowed only when criteria of a rule in the Grids are "exactly met"). When a claimant has both exertional and nonexertional limitations[2], the ALJ, in certain situations, cannot satisfy this burden through use of the Grids alone. *Bapp*, 802 F.2d at 605-07. If the claimant's nonexertional limitation "significantly diminish[es]" his work capacity "beyond that caused by his exertional impairment," the ALJ instead must rely on additional vocational resources, such as expert testimony. *Id.* at 605-06 (noting that the diminishment must be more than negligible). However, "the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert or preclude reliance" on the grids. *Id.* at 603. "Significantly diminish" means the "additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Id.* at 606 (footnote omitted).

Plaintiff contends that her non-exertional limitations, such as her difficulty seeing, required the use of a vocational expert. The Court disagrees. Here, the ALJ found:

---

[1] "Exertional limitations" are "limitations and restrictions imposed by [a claimant's] impairment(s) and related symptoms" that affect her "ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling)." 20 C.F.R. § 404.1569a(b).

[2] "Nonexertional limitations" include, *inter alia*, most mental impairments, such as depression, anxiety, inability to concentrate, and difficulty seeing or hearing. 20 C.F.R. § 404.1569a(c)(1); SSR 85-15, Titles II and XVI: Capability To Do Other Work – The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments, 1985 WL 56857, *2 (Soc. Sec. Admin. 1985).

15

> The claimant's ability to perform work at all exertional levels is compromised by non-exertional limitations. However, these limitations have little or no effect on the occupational base of unskilled work at all exertional levels. Social Security Ruling 85-15 indicates that restrictions against unprotected elevations and proximity to dangerous, moving machinery are not significant at any exertional level. That ruling provides further that as long as an individual has sufficient visual acuity to be able to handle and work with rather large objects and avoid ordinary hazards in a workplace, there would be a substantial number of jobs remaining across all exertional levels. Social Security Ruling 85-15 also indicates that most job environments do not involve great amounts of dust, etc. Therefore, the claimant's non-exertional limitations do not significantly erode her potential occupational base for unskilled work at all exertional levels. A finding of "not disabled" is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines and the guidance of Social Security Ruling 85-15.

T. 17.

Based upon the evidence in the record, the ALJ properly found that Plaintiff's non-exertional limitations, including her difficulty seeing, had little or no effect on the occupational base of unskilled work. *See* SSR 85-15, 1985 WL 56857, at *8 ("As a general rule, even if a person's visual impairment(s) were to eliminate all jobs that involve very good vision (such as working with small objects or reading small print), as long as he or she retains sufficient visual acuity to be able to handle and work with rather large objects (and has the visual fields to avoid ordinary hazards in a workplace), there would be a substantial number of jobs remaining across all exertional levels.").

For the reasons discussed above, there was substantial evidence to support the ALJ's RFC and credibility determinations. Since there is substantial evidence in the record to support the ALJ's conclusion that Plaintiff's non-exertional limitations do not significantly affect her ability to do unskilled work, the Court concludes that the ALJ's conclusion was not in error.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the decision denying benefits is **AFFIRMED**; and the Court further

**ORDERS** that Plaintiff's motion for judgment on the pleadings is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: April 14, 2014
       Albany, New York

Mae A. D'Agostino
U.S. District Judge